## The Inhabitants of WILTON vs. The Inhabitants of FALMOUTH.

Where a man abandoned his domicil in one town, and removed with his family to another, with the intention there to abide for an indefinite period, and was there in fact abiding, with such intention, on the twenty-first of *March*, 1821, his home was there, and he thereby gained a settlement, although his right to continue in the house in which he lived depended on the will of the owner.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J. presiding.

The action was brought to recover expenses for the support of one *James Dolly*, alleged to have had his settlement in *Falmouth* at the time they were incurred. The pauper had a derivative settlement from his father in *Falmouth*, and in 1818 removed with his father's family to *Wilton*, being then an inmate therein, although about twenty-three years of age. After his removal to *Wilton*, he was there married, and with his wife lived in his father's family a few months, and in *April*, 1819, removed with his family to *Vermont*, and there remained until 1821, when he left, and arrived at his father's house in *Wilton* on the last of *Feb.* or first of *March*, 1821. On the trial, the plaintiffs denied, that the pauper was in fact within their town on *March* 21, 1821; and insisted, that if he was, he was there but as a visitor, and had no such residence, as would give him a settlement by being there on that day. On these points there was much evidence introduced by the respective parties. The defendants' counsel contended, that if the pauper was in fact in *Wilton*, *March* 21, 1821, without any present intention of removing elsewhere, but intending to reside there, if the contemplated arrangement could be made, although he had no legal right or claim, and although his expectations were subsequently disappointed, it was nevertheless such a residence as the statute contemplated. The Judge instructed the jury, that the residence, dwelling and home required by the statute, was a permanent fixed abode, where the pauper had a legal right to be, and from which he could exclude all others not having an equal right with himself, and from which he could not be removed but by an act of trespass; and that if there was no place in *Wilton* to which the pauper

had, on *March* 21, 1821, a right to resort and abide in, a right which he could assert and maintain; he did not so dwell and have his home there, as to gain a settlement by virtue of the act. On returning their verdict for the plaintiffs, the jury were inquired of whether they found the pauper to have been in *Wilton* on *March* 21, 1821; and replied, that they could not agree as to that, and that from the instructions of the Judge on other points, they supposed it unimportant. The defendants excepted to the instructions.

The arguments were in writing.

*Evans*, for the defendants, argued in support of the principles contended for by him at the trial, and insisted that the instructions were erroneous. He cited *Greene* v. *Windham*, 1 *Shep.* 225; *Richmond* v. *Vassalborough*, 5 *Greenl.* 396.

*Wells*, for the plaintiffs, contended, that as the pauper once had a settlement in *Falmouth*, and that fact proved on the trial, the settlement must remain, until a new one is gained in some other place. The burthen is on the defendants to do it, and in this case, they must show a residence and domicil in *Wilton*, March 21, 1821, and the verdict shows that they have not. Two things are necessary to constitute a domicil, residence and intention there to remain. *Jennison* v. *Hapgood*, 10 *Pick.* 98; 2 *Kent's Com.* 430, *and note*; *Story's Con. of Laws*, 42; *Hallowell* v. *Saco*, 5 *Greenl.* 145. The habitation must be fixed, without any present intention of removing therefrom. *Putnam* v. *Johnson*, 10 *Mass. R.* 501. And it must be where a person has municipal rights and duties, and is subject to corresponding burdens. *Harvard College* v. *Gore*, 5 *Pick.* 367; *Hampden* v. *Fairfield*, 3 *Greenl.* 436. He insisted, that the instruction was correct; and at all events, that the verdict was right, as the defendants did not remove the burden resting upon them by proof furnished of a settlement in their town.

After advisement, the opinion of the Court was drawn up by

WESTON C. J.—One point taken is, that the jury not being agreed that the pauper had a residence in *Wilton*, on the 21st of *March*, 1821, without which the defence necessarily fails, the verdict for the plaintiffs is justified, whatever may have been the legal character of the instructions of the Judge. We do not so under-

stand the law. If a plaintiff has made out a *prima facie* case, and the jury find, that the matter set up in defence has not been proved, it is a verdict for the plaintiff. But if they are not agreed, whether the defence is proved or not, the case is not disposed of. It remains therefore to be determined, whether the instructions of the Judge are warranted by law.

It appears, that when the father of the pauper, in 1818, removed from *Falmouth* to *Wilton*, the pauper accompanied him, and established his domicil in the latter town. Subsequently he removed with his family to *Vermont*, where it is to be understood he established a new domicil. But this he soon after abandoned, and returned to *Wilton*. If he did so, with a view to take up his residence for an indefinite period, he might acquire in that town a new home, although his rights there were less strong than the instructions required. If he and his family were received as inmates by his father, so long as it might prove convenient and agreeable to the latter, or until the son could be otherwise accommodated, his home would be at his father's, while that arrangement continued, although the father had a right to require his removal from his residence at pleasure, with which the right of the pauper subsequently to abide there, is necessarily inconsistent. Nor was it essential, that the pauper should have the power to exclude all others, who might presume to resort to the same residence, without right. That would be an invasion of the rights of the father.

We are not aware, that such a control over an adopted residence is essential to the establishment of a domicil. It is not unusual for persons, with or without families, removing into a town, to be received at board, as the inmates of other families, and there to remain for years, although their right to do so, depends upon the pleasure of the owner or occupant of the house, where they are thus received. And yet in such cases, if they have abandoned their former homes, with the intention to abide for an indefinite period in the town, to which they have removed, we doubt not they there acquire a new domicil, and that the place where they lodge is for the time being their home, however precarious may be the tenure, by which they hold it. Nor does such domicil at all depend, upon the length of time, in which it is in fact continued. Inducements may arise for frequent changes, which may be yield-

ed to by persons of a certain temper and habits; and yet such persons may have a domicil, although it may not be so easily susceptible of proof. *Greene* v. *Windham,* 13 *Maine R.* 225.

In our judgment, therefore, if the pauper had abandoned his domicil in *Vermont,* and had removed with his family to *Wilton,* with an intention there to abide for an indefinite period, and was there in fact abiding, with such intention, on the twenty-first of *March,* 1821, his home was there, although his right to continue in the house depended on the will of the owner.

*Exceptions sustained.*